UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY KEYES,

    Plaintiff,

v.

WAYNE STATE UNIVERSITY,

    Defendant.

_____/

Hon. Victoria A. Roberts

Case No. 10-12087

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**I. Introduction & Procedural History**

On May 24, 2010, Plaintiff filed a Complaint alleging: Count 1 - race discrimination in violation of Title VII of the Civil Rights Act of 1964; Count 2 - retaliation in violation of Title VII of the Civil Rights Act of 1964; and Count 3 - race discrimination in violation of 42 U.S.C. § 1981. A Motion to Dismiss (Doc. #3) was file and fully briefed. Additionally, on the Court's order, the parties filed supplemental briefs. The Court heard oral argument on September 28, 2010. For the reasons stated, the Court **DENIES** Defendant's motion.

**II. Background**

Plaintiff is an African American female who was formerly employed as a secretary III by Defendant Wayne State University at its law school. Plaintiff worked for and reported to Karen Tarnas, a white female. Plaintiff claims that she was discriminated against during her employment with the law school, and that she was retaliated against by Tarnas for complaining about the discrimination. Plaintiff says that the retaliation against her ultimately ended when Tarnas fired her. Plaintiff claims that Defendant's treatment of her and retaliation against her

violated Title VII and 42 U.S.C. § 1981. The following relevant allegations are taken from Plaintiff's Complaint.

Plaintiff contends that she was the sole African American who reported to Tarnas. Plaintiff alleges that Tarnas made "racial statements" to her, like: it is "'ok to eat an apple at her desk but she couldn't eat any fried chicken.'" (*Compl.* at ¶ 9). Around March 25, 2009, Plaintiff says she complained about the fried chicken statement to unnamed law school deans, the University Equal Employment Opportunities Office, and to Tarnas herself. Following these complaints, a meeting was held between Defendant and Plaintiff about the statement. At this meeting, Plaintiff requested "diversity training" for Tarnas, but says that no training was arranged.

Following her complaint about the fried chicken statement, Plaintiff says that Tarnas criticized her, told her that she was unfocused, called her a liar, accused her of coming back from lunch late, and told her that she was being watched very carefully. Plaintiff alleges that her work was deemed unsatisfactory by Tarnas while comparable work completed by white employees was not.

Between April 1, 2009 and April 3, 2009, Plaintiff says she was "disparately disciplined" by Tarnas for "excessive absenteeism" "based on race." (*Compl.* at ¶ 11). As a result of her opposition to Tarnas' discriminatory treatment of her, Plaintiff says Tarnas fired her on May 28, 2009.

Finally, Plaintiff alleges that she had an employment contract with Defendant, and that she was disparately treated in the enforcement of that contract because of her race. Plaintiff claims that this disparate enforcement of her employment contract violates 42 U.S.C. § 1981.

**III. Standard of Review**

When reviewing a Rule 12(b)(6) motion to dismiss, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976)); *see also Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995). Because a motion to dismiss rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of witnesses." *Miller,* 50 F.3d at 377 (citing *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir. 1994)). However, while this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)). Rather, the complaint must contain either direct or inferential allegations with regard to all the material elements to sustain recovery under some viable legal theory. *DeLorean,* 991 F.2d at 1240 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). However, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 1940.

**IV. Applicable Law & Analysis**

### A. Count I: Violation of Title VII - Race Discrimination

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to

3

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

A claim of race discrimination under Title VII may be shown by (1) direct evidence of discrimination; or (2) circumstantial evidence which permits an inference of intentional discrimination. *McDonnell Douglas Corp. V. Green*, 411 U.S. 792 (1973).

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999) (citing *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1248 (6th Cir. 1995)). "[D]irect evidence of discrimination does not require a factfinder to draw any inference in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger,* 319 F.3d 858, 865 (6th Cir. 2003).

Circumstantial evidence is evidence which permits a factfinder to infer that the Defendant acted with discriminatory intent. *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997). Circumstantial evidence is analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To bring about an inference of unlawful discrimination with circumstantial evidence under the *McDonnell Douglas* framework, a plaintiff must show (1) Plaintiff is a member of a protected class, (2) Plaintiff suffered an adverse employment action, (3) Plaintiff was qualified for the position, and (4) circumstances indicate that the Plaintiff's race played a role in the adverse employment action. *See McDonnell Douglas,* 411 U.S. at 802. In either case, the alleged discrimination must be intentional.

### 1. Discriminatory Animous

Defendant says that Plaintiff does not allege facts sufficient to establish intentional race discrimination under Title VII because the Plaintiff's only allegation of intentional discrimination is an "isolated and vague remark" about eating fried chicken at her desk which makes "no reference to the Plaintiff's race" and is not indicative of discriminatory intent. (Mot. at 5). The Defendant also says that the statement "was made two months prior to the adverse employment action and was not made in the context of a disciplinary action." (*Id*.). Plaintiff responds that "[d]erogatory remarks that indicate prejudice are generally admissible to prove discrimination." (Resp. at 8); *see Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989).

According to the Defendant's Motion to Dismiss, the Sixth Circuit held in *Hunter v. Secretary of United States Army,* 565 F.3d 986, 997 (6th Cir. 2009) that 'isolated comments and "stray remarks", [sic] without more, are insufficient to establish discriminatory intent.' (Def.'s Br. at 1). However, the statement quoted by Defendant is not the holding of the Sixth Circuit. The Court, which was reviewing a grant of summary judgment, was referring to a remark made by the plaintiff's Team Leader, that "any high school kid could perform his job." The Court wrote that "we conclude that [the Team Leader's] single, isolated remark, insulting as it may be, simply does not rise to the level of a materially adverse employment action." *Hunter,* 565 F.3d at 997. In support of this conclusion, the Court cited the following: "*See Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007) (holding that isolated comments and 'stray remarks,' without more, are insufficient to establish discriminatory intent)." The quotation Defendant cites is a parenthetical describing the holding of a Seventh Circuit case. It is not the holding of the Sixth Circuit.

5

Additionally, even if the Seventh Circuit's analysis was deemed persuasive, that analysis is not appropriate at this time; the *Hunter* Court was considering a motion for summary judgment, not a motion to dismiss.

Similarly, Defendant points the Court to four factors in *Pinkston v. Accretive Health,* 2010 WL 187833, at *11-12 (E.D. Mich. 2010) used to evaluate disputed remarks:

(1) Were the disputed remarks made by the decisionmaker or by an agent of the employer uninvolved in the challenged decision?

(2) Were the disputed remarks isolated or part of a pattern of biased comments?

(3) Were the disputed remarks made close in time or remote from the challenged decision?

(4) Were the disputed remarks ambiguously or clearly reflective of discriminatory bias?

Although this analysis may be helpful in reviewing the evidence, it is inappropriate at this stage. Like in *Hunter*, the *Pinkston* Court was considering a motion for summary judgment, not a motion to dismiss. Further, the *Pinkston* Court used this test to decide whether the plaintiff could establish that the defendant's purported reasons for termination were a pretext for unlawful discrimination. *See Pinkston,* 2010 WL 187833 at *11. Here, where discovery has not begun and a legitimate reason for termination has not been proffered, this analysis is premature.

However, it is clear at this early stage that Plaintiff's allegations, taken as true, do meet many of the elements listed above. First, the fried chicken comment was allegedly made by Tarnas herself, a person with decision making authority who allegedly terminated Plaintiff. Second, although the fried chicken comment is the only one specifically paraphrased in Plaintiff's Complaint, Plaintiff says that Tarnas made similar statements to her. Thus, it is

possible that the comment was not isolated, but part of a pattern or practice of comments. Third, Plaintiff alleges that she complained about the comment around March 25, 2009, and that she was "disparately disciplined by Tarnas for excessive absenteeism between April 1, 2009 and April 3, 2009 based on race." (Compl. ¶ 15, ¶ 11). Also, Plaintiff alleges she was fired by Tarnas on May 28, 2009 in retaliation for the complaint. Therefore, the disputed comment was made close in time to the challenged decisions. Fourth, the statement may reflect discriminatory bias based on racial stereotyping. The belief that African Americans have a strong affinity for fried chicken is a long standing stereotype in America, and is often considered to be offensive or derogatory.

Plaintiff alleges an offensive comment based on racial stereotypes by the person who ultimately fired her in retaliation for complaining about that particular comment. Taking the allegations in the Complaint as true, and in the light most favorable to the Plaintiff, this comment could be considered evidence of Tarnas' discriminatory intent. *See Ndene v. Columbus Academy,* 2010 WL 1031864, at *3 (S.D. Ohio 2010) ("Whether the alleged comments require an evidentiary inference in order to amount to discriminatory motive is not a matter to be resolved at this stage of the proceedings.").

**2. Evidence of Race Discrimination**

To establish a claim under Title VII using circumstantial evidence, a plaintiff must create an inference of unlawful discrimination by showing a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In Defendant's Motion to Dismiss, Defendant raises two reasons why Plaintiff's claim does not establish a prima facie case: (1) Plaintiff did not allege facts sufficient to establish the third element, that Plaintiff was

7

qualified for the position; and (2) the Plaintiff cannot allege facts sufficient to prove the fourth element, that race played a role in her discipline or termination, because no similarly situated members of a non-protected class were treated more favorably than Plaintiff. The Court rejects these arguments; Plaintiff is not required to make out a prima facie case in her Complaint.

The Supreme Court has explicitly ruled that a plaintiff is not required to plead a prima facie case of discrimination under *McDonnell Douglas* to survive a 12(b)(6) motion to dismiss. *See Swierkiewicz v. Sorema,* 534 U.S. 506 (2002). The Court, in no uncertain terms, stated that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510. The Court unanimously held that "an employment discrimination complaint need not include such facts [as required to make out a prima facie case] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 508 (quoting Fed. R. Civ. P. 8(a)).

The Court "rejected the argument that a Title VII complaint requires greater 'particularity,' because this would 'too narrowly constric[t] the role of the pleadings.'" *Id.* at 511 (quoting *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283, n. 11 (1976). Thus, '[w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' *Id.* at 511 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "Consequently, the ordinary rules for assessing the sufficiency of a complaint apply." *Id.* at 511.

However, the "ordinary rules" of pleading are much debated since the Supreme Court's decisions in *Bell Atlantic Corportion v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,*

8

129 S.Ct. 1937 (2009).

In *Twombly*, the majority of the Court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations omitted). Furthermore, the *Twombly* Court overruled *Conley v. Gibson,* 355 U.S. 41 (1957), a case heavily relied on by the *Swiekiewicz* Court. However, the Court explained that requiring plaintiffs to provide enough facts to state a plausible claim did not run counter to *Swierkiewicz*:

> "*Swierkiewicz* did not change the law of pleading, but simply re-emphasized . . . that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements." 313 F. Supp. 2d, at 181 (citation and footnote omitted). Even though *Swierkiewicz*'s pleadings "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination," the Court of Appeals dismissed his complaint for failing to allege certain additional facts that *Swierkiewicz* would need at the trial stage to support his claim in the absence of direct evidence of discrimination. *Swierkiewicz*, 534 U.S., at 514, 122 S. Ct. 992. We reversed on the ground that the Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement by insisting that *Swierkiewicz* allege "specific facts" beyond those necessary to state his claim and the grounds showing entitlement to relief. *Id.*, at 508, 122 S. Ct. 992.

*Twombly*, 550 U.S. at 570.

*Iqbal* does not explicitly reference *Swierkiewicz*, but states: "Our decision in *Twombly* expounded the pleading standard for "all civil actions," and it applies to antitrust and discrimination suits alike." *Iqbal,* 129 S. Ct. at 1953 (quoting Fed. R. Civ. P. 1) (citing *Twombly*, 550 U.S. at 555-56, n.3).

Thus, although it appears that *Twombly* and *Iqbal* changed the basic pleading standard for

9

all actions, the reconciliation of these later rulings with *Swierkiewicz* suggests that for pleadings in employment discrimination suits, plaintiffs are not required to plead every element of a prima facie case; however, to comply with Fed. R. Civ. P. 8(a), plaintiffs must allege more than conclusory allegations. Essentially, the facts alleged in the complaint, when taken as true, must rise to the level of making the claim "plausible on its face," not merely possible. *See Twombly,* 550 U.S. at 570; *Iqbal,* 129 S.Ct. at 1949.

In her Complaint, Plaintiff alleges:

(1) She is African American, a protected class under Title VII, (¶ 5);

(2) She worked as a secretary III for Karen Tarnas at the time of the alleged discrimination, (¶ 7, 8);

(3) She was the only African American working for Tarnas, a white female, (¶ 8);

(4) She was disparately treated in her job assignments, evaluations and working conditions, (¶ 6);

(5) Tarnas made "racial statements" to her, including the fried chicken comment, (¶ 9);

(6) She complained about the comment to several authorities, including Tarnas, on March 25, 2009, (¶ 15);

(7) Tarnas found Plaintiff's work unsatisfactory, while Tarnas did not criticize comparable work by white employees, (¶ 10);

(8) Tarnas criticized Plaintiff's focus at work, called her a liar, accused her of taking a long lunch, and told her she was watching her very carefully, (¶ 10);

(9) Tarnas disparately disciplined her for absenteeism between April 1 and April 3, 2009,

  (¶ 11); and

  (10) She was ultimately fired by Tarnas on May 28, 2009 for complaining about Tarnas'
  treatment of her, (¶ 18).

Plaintiff says that the comment, criticisms, and discipline were directed at her because of her race, and that Tarnas did not treat white employees comparably. Plaintiff states specific facts (such as the dates of her discipline for absenteeism and a disparaging statement made to her), which are not mere conclusions. That Plaintiff does state some conclusions (such as she was disparately treated in her evaluations) does not undermine the facts that Plaintiff alleges in support of her claims.

  Although Plaintiff does not name those white employees who Tarnas treated more favorably than Plaintiff, this is not dispositive. Further, Defendant's allegation in its Motion to Dismiss that Tarnas had no other secretary IIIs who reported to her is also unavailing, since Plaintiff disputes this. (Pl.'s Br. at 8 ("The plaintiff was in a particular category under the CBA that made her comparable to all other secretary III position employees reporting to Ms. Tarnas."). The Court does not decide disputed facts when considering a motion to dismiss; instead, the Court decides whether Plaintiff's allegations show a plausible claim.

  As this Court acknowledged in *Kasten v. Ford Motor Company*,

> [it] is not clear going forward from *Iqbal* . . . how much factual content is necessary to give the defendant fair notice, and how much content is necessary to 'nudge claims' from merely conceivable to plausible. There is no roadmap for courts to distinguish between conclusory and well-pled factual allegations, and then determine whether such well-pled facts plausibly give rise to an entitlement to relief. 2009 WL 3628012, at *7 (E.D. Mich. 2009).

However, the Court is certain that the Plaintiff's Complaint gives the Defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. On its

face, the Complaint states enough facts to show that Plaintiff's claim to relief is plausible; her Complaint sufficiently states a claim for race discrimination under Title VII.

The Court finds Defendant's argument that "Plaintiff does not even bother to state the reason given by the Defendant for her termination, or to state that said reason was merely pretextual" premature and misguided. Plaintiff is not required to proffer a legitimate, nondiscriminatory reason for her termination; this is Defendant's burden of production once Plaintiff has made out a prima facie case. *See McDonnell Douglas,* 411 U.S. at 802. If Defendant proffers a legitimate, nondiscriminatory reason for Plaintiff's termination, Plaintiff may bring forth evidence that the proffered reason is pretext for unlawful discrimination. Plaintiff is not required to allege that the proffered reason for her termination is mere pretext *before* a reason is proffered.

While Defendant's arguments may be appropriate for a motion for summary judgment they are without merit in a motion to dismiss.

**B. Count II: Violation of Title VII - Retaliation for Opposing Race Discrimination**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any . . . unlawful employment practice . . . ." 42 U.S.C. §2000e-3(a)1.

Defendant argues that Plaintiff's retaliation claim should be dismissed because Plaintiff fails to allege that Tarnas was aware that Plaintiff opposed the alleged discrimination. Defendant also says that Plaintiff's failure to allege Defendant's stated reason for firing her or to allege facts to show it was pretext is fatal to her claim. The Court finds these arguments unavailing.

12

### 1. Plaintiff alleges Tarnas knew of her protected activity.

Plaintiff alleges she opposed the unlawful discrimination by speaking with Tarnas herself. Paragraph fifteen of Plaintiff's Complaint states, "After hearing the 'fried chicken' statement the plaintiff complained to the law school deans, the university EEOC office *and Karen Tarnas* on or about March 25, 2009." (emphasis added). Thus, Defendant is incorrect.

### 2. Plaintiff is not required to allege a legitimate, non-retaliatory reason for her termination.

Plaintiff does not bear the burden to proffer a legitimate, nondiscriminatory/ non-retaliatory reason for her termination. Defendant bears this burden of production.

### C. Count III: Violation of 42 U.S.C. § 1981

Section 1981 of Title 42 of the United States Code guarantees "All persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts . . . as [is] enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a)2.

Defendant argues that Plaintiff's § 1981 claim fails for three reasons: (1) 42 U.S.C. § 1981 applies only to private discrimination; (2) Plaintiff fails to identify the alleged contract; and (3) Plaintiff's § 1981 claim must be brought pursuant to Michigan's Public Employees Relations Act (PERA).

### 1. Section 1981 reaches discrimination "under color of law."

Defendant argues that section 1981 applies only to private contracts, not contracts with "public employers." In support of this, Defendant cites *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989), for the proposition that "[i]t has been long established that 42 U.S.C. § 1981 'prohibits racial discrimination in the making and enforcing of *private* contracts." (Def.'s Supplemental Br. at 2). Defendant's argument has two flaws: (1) *Patterson* was, at least in part,

legislatively overruled by the Civil Rights Act of 1991; and (2) *Patterson* did not stand for the proposition that § 1981 applied *only* to private contracts.

In *Runyon v. McCrary,* the Supreme Court stated that § 1981 prohibits discrimination in private contracts. 427 U.S. 160, 168 (1976). In the opinion, the Court discussed the source of Congress' power to extend this prohibition to private discrimination, instead of just discrimination by public actors. The Court wrote that § 1981 'was designed to do just what its terms suggest: to prohibit all racial discrimination, whether or not under color of law . . . .' *Runyon,* 427 U.S. at 170 (quoting *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 440 (1968)). Thus, prior to *Patterson,* the Court acknowledged that § 1981 applied to both private and public discrimination.

A brief reading of the current codification of § 1981(c) exemplifies the error of Defendant's argument: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment *under color of State law*." (emphasis added).

The Defendant provided the Court with no law or case post the 1991 Civil Rights Act which limits § 1981 to private contracts.

### 2. Plaintiff sufficiently identifies the alleged contract.

Plaintiff alleges in her Complaint that she had an employment contract with Defendant. Plaintiff does not identify the specific contract in any allegation in her Complaint. In both Defendant's Motion to Dismiss and Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff and Defendant acknowledge the existence of a collective bargaining agreement (CBA) between Plaintiff's union and Defendant. Thus, the sufficiency of Plaintiff's claim under 42 U.S.C. § 1981 turns on whether Plaintiff is required to identify the employment contract

specifically as the CBA.

In determining whether the Complaint states a plausible claim for relief, the Court must "draw on its experience and common sense." *Iqbal,* 129 S. Ct. at 1940. Recalling that Fed. R. Civ. P. 8(e) mandates that "[p]leadings must be construed so as to do justice," the Court does not find Plaintiff's failure to specifically identify the CBA as the contract in her Complaint, fatal.

Defendant is certainly not confused about the contract Plaintiff has in mind. Its Motion to Dismiss says, "[t]he only contract involved in Plaintiff's employment at Wayne State University . . . was a collective bargaining agreement between the Plaintiff's union and the University." The Supreme Court stated in *Twombly,* "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." 550 U.S. at 545. From the Complaint allegations, the Court finds that Defendant has fair notice, and Defendant's argument that Plaintiff insufficiently identified the specific contract fails.

### 3. PERA does not govern Plaintiff's § 1981 claim.

Defendant contends that even if the CBA is sufficiently identified, the agreement was between Defendant and Plaintiff's union; Plaintiff was not a party, and cannot bring a claim that relies upon it. Defendant cites nothing in support of this contention, and concedes in its Supplemental Brief that, in general, employees covered by a CBA may bring suit against an employer under § 1981.

However, Defendant says that even if employees covered by a CBA may, in general, bring suit under § 1981, Michigan public employees covered by a CBA cannot, because "the exclusive remedy for any violation of the CBA is governed by Michigan statute." According to the Defendant, Plaintiff's § 1981 claim based on the CBA is governed by the Public Employee

15

Relations Act (PERA), and must be resolved by filing a claim with the Michigan Employee Relations Commission. *See* M.C.L.A. § 423.201 *et seq*. In support, the Defendant cites *Rockwell v. Board of Education,* 393 Mich. 616; 227 N.W.2d 736 (1975). *Rockwell,* however, differs from Plaintiff's case in that it involved what was clearly an unfair labor practice under PERA: a teacher's strike. A § 1981 suit is not so easily characterized as a claim of unfair labor practice, even when it stems from an employment relationship. Indeed, a reading of the PERA statute discussing unfair labor practices leaves the Court with little doubt that an employer's racial discrimination is not an unfair labor practice. *See* M.C.L.A. § 423.210(1). In any event, Defendant does not cite any portion of PERA under which the Plaintiff's claim falls, and fails to show how her § 1981 claim could be considered an unfair labor practice. The Court is not convinced that PERA is applicable here.

Further, Plaintiff claims that she may bring her § 1981 cause of action against her employer in federal court unless the CBA mandates that the cause of action be arbitrated. Plaintiff cites *14 Penn Plaza v. Pyett,* 129 S. Ct. 1456, 1474 (2009) for the proposition that plaintiffs bringing a claim under a CBA may be forced to arbitrate only if the CBA contains a provision that "clearly and unmistakably" requires union members to arbitrate that cause of action. As Plaintiff points out, there has been no discovery, and the provisions of the CBA are still unknown. The Court declines to dismiss Plaintiff's § 1981 claim based on these arguments.

**V. Conclusion**

Defendant's Motion to Dismiss is **DENIED** in its entirety.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: October 5, 2010

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on October 5, 2010.
>
> s/Linda Vertriest
> Deputy Clerk